UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SCOTT ANDERSON,<br><br>                   Plaintiff,<br>    v.<br><br>PACIFIC CRANE MAINTENANCE<br>COMPANY, L.P.,<br><br>                   Defendants. | CASE NO. 3:16-cv-05825-RJB<br><br>ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES |

THIS MATTER comes before the Court on Plaintiff's Motion to Compel Discovery Responses. Dkt. 23. The Court has considered Defendant's Response (Dkt. 25), Plaintiff's Reply (Dkt. 27), and the remainder of the file herein.

## BACKGROUND

Facts alleged in the Complaint are recited herein because of their relevance to resolving the discovery dispute.

ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES - 1

Defendant employed Plaintiff as a crane mechanic at the Port of Tacoma for approximately 11 years. On September 16, 2015, Plaintiff informed a state inspector for the Division of Occupational Safety and Health (DOSHA) that a component on some cranes was blowing fuses and overheating. The safety inspector "red-tagged" the components from use until their repair, which later prevented the cranes from being used. During the next several months, Plaintiff's union took steps to confront Defendant about safety issues initially raised by Plaintiff, including threatening work stoppages. Dkt. 1-1 at ¶¶4, 6, 7.

The Complaint alleges that Defendant took a series of actions against Plaintiff in retaliation, such as removing Plaintiff from a lead position, giving Plaintiff less desirable work assignments, and denying Plaintiff's bid for a night shift position in May 2016. It is further alleged that Defendant filed baseless "complaints" against Plaintiff, for multiple reasons: failing to report an injury, leaving work early to attend work-related meetings, improperly calling in sick, and not reporting equipment damage. The stress of Defendant's actions allegedly became intolerable, ultimately forcing Plaintiff to leave his work.
Dkt. 1-1 at ¶¶8-12.

The Complaint alleges claims for retaliation in violation of the Washington Industrial Safety and Health Act, RCW 49.17, and constructive discharge/termination in violation of public policy. Dkt. 1-1 at ¶¶16-21.

Plaintiff served Defendant with his first discovery requests on February 9, 2017. Defendant responded to the request on March 13, 2017, and produced approximately four-hundred pages of discovery. Dkt. 2t at 1, 2. The produced discovery contained a copy of Plaintiff's personnel file, including copies of performance evaluations, employee grievances, and non-privileged internal communications about Plaintiff. Dkt. 29 at 1, 2. Defendant supplemented

its response on May 26, 2017 with approximately five-hundred pages of personnel and workers compensation records produced by third parties. Dkt. 26 at 2.

Plaintiff also served a discovery request on Plaintiff's union, which produced email correspondence between Plaintiff and his managers or supervisors. Dkt. 29 at 2. These emails were not found in discovery produced by Defendant. *Id*.

Prior to the filing of the motion to compel, the parties engaged in two telephonic discovery conferences. Dkt. 24 at 3. Per Plaintiff's counsel, defense counsel "told [Plaintiff's counsel] that his client refused to negotiate on any of [*sic*] disputed requests and would not produce responsive documents." *Id*.

At issue are Defendants' responses to Interrogatory Nos. 3, 7, and 13-16, and Requests for Production Nos. 4, 7, 13, 16. The discovery requests and responses at issue are quoted verbatim below as they are discussed.

## DISCOVERY STANDARD

Courts have broad authority to conduct discovery, but are also duty-bound to follow the Federal Rules of Civil Procedure. Under Fed. R. Civ. P. 26(b)(1), which governs the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The proportionality factor is not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." *Id*., Cmt to 2015 Amendment.

## DISCUSSION

**A. Discovery Requests**

The Court considers and should rule on each discovery request individually. However, in general, Defendant did not demonstrate exemplary efforts. Boilerplate language appears throughout, including the phrase, "not calculated to lead to admissible evidence," which closely resembles an outdated standard. *See* Cmt. to 2015 amendment to Fed. R. Civ. P. 26(b)(1); *VHT, Inc. v. Zillow Grp., Inc*, No. C15-1096JLR, 2016 WL 7077235, at *1, FN 4 (W.D. Wash. Sept. 8, 2016); *In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). Although at least two of the discovery requests are specific and directly related to key issues in the case, Defendant responded with stock language without further explanation. Defendant can and should do better.

<u>Interrogatory No.3 and Request for Production No. 4</u>

> *Plaintiff*: Identify all claims for hearing loss made by PCMC employees from January 2010 to present, including for each whether the employee notified his or her employer of the injury in compliance with PCMSC Rule #602.
>
> *Response*: Objection. Unduly burdensome, overbroad, and not calculated to lead to admissible evidence. There are no class claims or comparator-related claims in this lawsuit and this interrogatory is far beyond the scope of the claims in dispute in this case. PCMC further objects as this interrogatory would require disclosure of personal health care information, and other confidential information for other employees that are not parties to this litigation.
>
> *Plaintiff*: Produce any and all documents pertaining to your answer to the preceding interrogatory [Interrogatory No. 3].
>
> *Response*: [Identical response to Interrogatory No. 3]

According to Plaintiff, the purpose of these requests is to counter the Defendant's stated basis for its adverse employment actions, namely, that Plaintiff failed to report the hearing loss injury of another employee when under an obligation to do so. Plaintiff appears to theorize that

other employees have filed hearing loss injury claims with the Office of Worker's Compensation Program (OWCP) without previously reporting the injury beforehand, yet those employees' superiors, unlike Plaintiff, were not subjected to adverse employment consequences. Dkt. 27 at 4.

Defendant makes several arguments in defense of its discovery responses. According to Defendant, Plaintiff is not entitled to discovery relating to others' hearing loss claims, because (1) the records impinge on third parties' privacy interests and should be protected; (2) the records are irrelevant to Plaintiff's claims, because they would be comparator evidence, and Plaintiff does not allege claims for disability or disparate treatment, and (3) the request is "grossly" overbroad. Dkt. 25 at 4-6.

Defendant's arguments are unavailing. First, to the extent hearing loss records would involve third parties' privacy interests, Defendant can rely on the parties' stipulated protective order (Dkts. 21, 22), make redactions as allowable under the rules, or seek protection of the Court. Next, although Plaintiff does not bring claims for disability or disparate treatment, the evidence sought is relevant to the claims alleged. The legitimacy of Defendant's adverse employment actions could be disproved if Plaintiff could show that other Lead Position employees were not terminated for failing to report hearing loss injuries. Finally, this request is not overbroad. Defendant has not shown to the contrary, and the Court need not accept Defendant's legal conclusion at face value.

As to these two discovery requests, Plaintiff's motion to compel is granted and the discovery compelled.

Interrogatory No. 7 and Request for Production No. 7

> *Plaintiff*: Identify any other employee who has been terminated, demoted, or disciplined for reasons similar to your answer to Interrogatory No. 6 as the basis for Plaintiff's removal from the Lead Position.

ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES - 5

*Response*: Objection. Assumes facts not in evidence—plaintiff was not terminated from PCMC, he resigned his steady employment to return to the dispatch hall. PCMC further objects because the interrogatory is unduly burdensome, overbroad, and not calculated to lead to admissible evidence. There are no class claims or comparator-related claims in this lawsuit and this interrogatory is far beyond the scope of the claims in dispute in this case.

*Plaintiff*: Produce any and all documents pertaining to your answer to the preceding interrogatory.

*Response*: *See* Answer to Interrogatory No. 7.

According to Plaintiff, these discovery requests seek disciplinary records of other employees disciplined "for the conduct Plaintiff was disciplined for . . . includ[ing] that he was disciplined . . . for reporting his safety concerns." Dkt. 23 at 3.

Defendant responds that, similar to Interrogatory No. 4, these two discovery requests infringe on third parties' privacy interests and should be protected, and they are overbroad and irrelevant to Plaintiff's claims. Dkt. 25 at 4-6.

To reach the issue of what discovery is actually sought, consideration must extend beyond Interrogatory No. 7 and Request for Production No. 7 to Interrogatory No. 6[1] and the Answer to the Complaint[2] (Dkt. 16 at 4). These two discovery requests are limited by Defendant's Answer to the Complaint, because their own terms rely on the Answer. The Answer

---

[1] Interrogatory No. 6: State with particularity the performance problems for which PCMC did not select Plaintiff as a back-up lead, as alleged in ¶10 of PCMC's Answer.

Answer: Objection. Vague and confusing interrogatory. Without waiving any objections, PCMC states that plaintiff had performance problems at this time, including failure to follow supervisor directions, failure to follow policies, failure to timely complete assignments, failure to perform required job duties, and not working as directed [sic] PCMC reserves the right to supplement this response as discovery is just starting. Dk. 24-1 at 6.

[2] 10. Because of this discriminatory treatment, Plaintiff sought a night shift position in May 2016, but PCMC took steps to preclude him from doing so. PCMC personnel also prevented Plaintiff from acting as back-up lead, though that was his right under the dispatch rules.

Answer: Defendant admits that it did not select Plaintiff as a back-up lead in response to Plaintiff's ongoing performance problems, and further states that it has discretion to make that decision. Defendant further denies the remaining allegations[.] Dkt. 16 at 4.

cites to "ongoing performance problems" as the basis for denying night shift and back-up lead positions to Plaintiff. Piecing the pleadings together then, the Court concludes that Interrogatory No. 7 seeks identification of employees disciplined for "ongoing performance problems," and Request for Production No. 7 seeks documents related thereto. Unfortunately for Plaintiff, who drafted the two discovery requests in such a way as to depend on Defendant's Answer, the phrase "ongoing performance problems" could encompass a huge range of disciplinary actions. Presumably many legitimate disciplinary actions could be based on ongoing performance problems. Therefore, compelling these two discovery requests is not appropriate.

Plaintiff's motion adds the helpful clarification that the two discovery requests seek records of other employees similarly disciplined for reporting safety concerns. Dkt. 23 at 3. This is not what the requests, on their own terms, seek. Parenthetically, the Court notes that even if the requests had been better drafted to reflect Plaintiff's apparent intent, it would seem doubtful that Defendant would self-report disciplining its employees for reporting safety concerns. Other means of discovery may have better gathered the information desired.

As to these two discovery requests, Plaintiff's motion to compel is denied.

Request for Production No. 13

*Plaintiff*: Produce any and all records regarding Crane 6 and 7 machinery house service hoists, including but not limited to records from the warranty boxes and records in the folders and books in the Crane Shop office, from January 2012 to present.

*Response*: Objection. Unduly burdensome, overbroad, and not calculated to lead to admissible evidence. This interrogatory is far beyond the scope of the claims in dispute in this case.

According to Plaintiff, this request for crane records is clear on its face, and Defendant's verbal assertion at a discovery conference that it does not know what is being sought is "inconceivable at best." Dkt. 23 at 3.

Defendant argues that the crane records are irrelevant, because Plaintiff need not prove that a safety violation actually occurred, but rather need only prove that he was terminated for *reporting* a safety complaint. Dkt. 25 at 6, 7. Defendant also argues that the request is overbroad, because it seeks crane records back to 2012, but the incident occurred in 2015-2016. *Id*.

In the context of a claim for wrongful discharge in violation of public policy, *Ellis v. City of Seattle*, 142 Wn.2d 450 (2000) sets out the elements in the four-part test. When discussing the second element, the "jeopardy element," the *Ellis* court highlighted that "[i]n considering this element . . . there has been some question as to whether a plaintiff must prove an *actual* violation of the public policy or must simply have an objectively reasonable belief that the policy may be violated[.]" *Id*. at 460-61. The Court rejected the former in favor of the latter. *Id*. Applied here, the Court finds that the crane records sought are relevant to the issue of whether Plaintiff had an objectively reasonable belief about the safeness of the cranes. Other than highlighting the date range, Defendant made no showing as to why the request is overbroad.

As to this discovery request, Plaintiff's motion to compel is granted and the discovery compelled.

<u>Request for Production No. 16</u>

> *Plaintiff*: Produce any and all emails between PCMC management or PCMC employees and Lance Gyldenedge at Crane Repair Service from January 2014 to the present pertaining to Plaintiff and safety complaints made by Plaintiff, including but not limited to regarding Crane 6 and 7 machinery house service hoists.
>
> *Response*: Objection. Unduly burdensome, overbroad, and not calculated to lead to admissible evidence. This interrogatory is far beyond the scope of the claims in dispute in this case. Without waiving any objections, nonprivileged communications from PCMC regarding plaintiff are being produced at PCMCSA00263 to PCMCSA000403.

Plaintiff represents that Mr. Gyldenedge is the crane inspector to whom Plaintiff complained of safety concerns, and the discovery seeks email communication between Mr. Gyldenedge and Defendant's employees about the safety complaints made by Plaintiff.

It appears that Defendant devotes a single paragraph in response to Plaintiff's motion for this discovery request. Dkt. 25 at 7. The paragraph represents that Defendant has not withheld discovery, but rather has produced "all communications" with other parties relating to Plaintiff. *Id*.

In Reply, Plaintiff argues Defendant has misrepresented the extent of its production, because Defendant's production of "all communications" has not yielded any email communications with Mr. Gyldenedge, a result that "strains credulity." Dkt. 27 at 5, 6. By means of a third party subpoena, Plaintiff has obtained emails that Plaintiff believes should have also been produced by Defendant. *Id*.

This discovery request should be compelled. Its relevance to the case is obvious. If, as Defendant represents, Defendant has already produced all responsive discovery, then there is nothing left to produce and the request will not be unduly burdensome to Defendant.

As to this discovery request, Plaintiff's motion to compel is granted and the discovery compelled.

Interrogatory No. 13, Interrogatory No. 14, and Interrogatory No. 15

*Plaintiff*: State any and all facts support, contradict, or in any way relate to PCMC's fifth [sixth, and seventh] affirmative defense[s].

*Response* [for all three interrogatories]: Objection; this request call for invasion of the attorney-client and work product privileges, and is overbroad, unduly burdensome, and beyond the scope of permissible discovery. In addition, this request is wrongfully propounded to harass the Defendant. Discovery that request a party to state "all" or "every" fact supporting contention are unduly burdensome and overbroad . . . [citations omitted] Courts have uniformly held that a request to provide "all facts" [*sic*] support of its denial of allegations in the pleadings is an unreasonable and inappropriate burden on

the other party. . . [citation omitted] Furthermore, PCMC reserves the right to
supplement this response as discovery is just starting.

Plaintiff contends that its discovery request is allowable and appropriate under Fed. R
Civ. P. 33(a)(2). Dkt. 23 at 3. According to Plaintiff, Defendant objected to these interrogatories
but has not yet provided any responsive discovery. *Id*.

Defendant defends its response to the discovery requests by arguing that these
"contention interrogatories," which ask for "each and every fact" are an abuse of the discovery
process and are overbroad and unduly burdensome. Further, Defendant argues, the contention
interrogatories serve only to uncover Defendant's litigation strategy and "border too closely to
protected work-product." Dkt. 25 at 7, 8. Finally, Defendant reminds the Court that the deadline
for discovery had not yet elapsed. (This argument is now moot, since the deadline elapsed on
August 14, 2017.)

Defendant's arguments exaggerate what was actually asked for in the interrogatories. The
interrogatories ask Defendant to articulate the facts, not the legal theories, that support its
defenses. The interrogatories are consistent with the Fed. R. Civ. P. 33(a)(2), which permits
interrogatories "relate[d] to any matter that may be inquired into under Rule 26(b)," which
defines the scope of discovery generally. The Court is optimistic that counsel for Defendant can
set out the facts in such a way that would not reveal privileged material. Defendant should be
compelled to respond to these interrogatories, but should Defendant need additional relief, e.g.,
because a response would require hundreds of hours of attorney labor, Defendant can make a
timely motion and proper showing.

Authority cited by Defendant is only persuasive authority, and the cases can easily be
distinguished. Defendant cites several cases for the proposition that contention interrogatories
"which systematically track all of the allegations . . . and that ask for 'each and every fact' . . .

ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES - 10

are an abuse of discovery process." Dkt. 25 at 7. In this case, Plaintiff's interrogatories seek facts relating only to Defendant's affirmative defenses, not the Answer in its entirety, and Plaintiff seeks to compel discovery for only three of ten affirmative defenses.

As to these discovery requests, Plaintiff's motion to compel is granted and the discovery compelled.

Interrogatory No. 16

> *Plaintiff*: State any and all facts support, contradict, or in any way relate to PCMC's seventh affirmative defense.
>
> *Response*: [same as Interrogatory No. 13] Furthermore, this request is duplicative of Interrogatory No. 15.

The Court agrees with Defendant that this interrogatory is duplicative of Interrogatory No. 15.

As to this discovery request, Plaintiff's motion to compel denied.

**B. Costs**

Ordering payment of costs associated with filing a motion to compel is permissible under the rules. Fed. R. Civ. P. 37(a)(5). While Defendant did respond to Plaintiff's initial discovery request, and while Defendant does maintain the right (and has the obligation) to supplement discovery, Defendant's efforts, on the whole, left much to be desired. Plaintiff should file a declaration detailing costs for this motion by September 1, 2017.

**C. Modification to Scheduling Order.**

All discovery responses shall be served by Defendant on Plaintiff by September 8, 2017. For that limited purpose, the discovery deadline should be extended.

Because of the production of additional discovery near to the current dispositive motions deadline, the dispositive motions deadline should be extended to Tuesday, September 26, 2017.

\* \* \*

THEREFORE, Plaintiff's Motion to Compel Discovery Responses (Dkt. 23) is GRANTED IN PART and DENIED IN PART.

Plaintiff shall file a declaration for costs associated with this motion by September 1, 2017.

The Discovery Deadline of August 14, 2017, is HEREBY EXTENDED IN PART to Friday, September 8, 2017, for Defendant to respond to discovery consistent with this order.

The Dispositive Motions Deadline of September 12, 2017, is HEREBY EXTENDED to Tuesday, September 26, 2017.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 17th day of August, 2017.

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge